UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| GEORGE WRIGHT, JR., | ) | C/A No.: |
| | ) | |
| Plaintiff, | ) | |
| | ) | **COMPLAINT** |
| -vs- | ) | (Jury Trial Demanded) |
| | ) | |
| HONDA OF AMERICA MFG., INC., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

The Plaintiff, complaining of Defendant, alleges and says the following:

## PARTIES, JURISDICTION, AND VENUE

1.  Plaintiff George Wright, Jr., is a resident of Florence, South Carolina.

2.  Defendant Honda of America Mfg., Inc., is a corporation that was incorporated in the state of Ohio and maintains a factory in Timmonsville, South Carolina.

3.  This court has subject matter jurisdiction by virtue of the Plaintiff bringing federal claims, as described below, and has personal jurisdiction over the Defendant, which maintains a place of business in South Carolina and continuously does business within the state.

4.  Venue is proper in that the acts and events giving rise to the Plaintiff's claims all occurred in this district.

5.  The Plaintiff had satisfied all administrative prerequisites to bringing suit.

## FACTS

6.  Plaintiff began his employment with Defendant Honda of America Mfg., Inc. in 1998 as a production associate. Over the course of more than two decades, Plaintiff advanced

through the employment ranks, ultimately serving as an Assistant Manager for the two years preceding the filing of this Complaint.

7. Plaintiff's direct supervisors during the relevant period were Clint Floyd, Unit Manager, and Scott McKenzie, Area Manager, both of whom are Caucasian males. Since assuming supervisory roles over Plaintiff approximately four years ago, Floyd and McKenzie have engaged in a persistent campaign of discrimination, harassment, and retaliation against Plaintiff on the basis of his race, African American.

8. In or around 2022, Plaintiff filed a formal complaint with Defendant's Compliance and Ethics ("C and E") Department, alleging that Floyd had subjected him to race discrimination. Defendant's response was inadequate: the investigation was perfunctory, and no meaningful corrective action was taken. Instead, the discrimination and retaliation intensified following Plaintiff's complaint.

9. Shortly after Plaintiff's complaint, Defendant promoted Floyd over Plaintiff, despite Plaintiff's qualifications and tenure. Floyd had previously boasted to Plaintiff that he would receive the promotion, further evidencing a discriminatory and hostile environment.

10. In 2022, the Assistant Manager position was not posted as required by Defendant's policies. Instead, McKenzie awarded the position to Floyd without providing Plaintiff, who was next in line and qualified, any opportunity to apply. Plaintiff was thus denied advancement due to race discrimination.

11. During 2022, while Plaintiff was serving as a production manager and Floyd as a quality manager, Floyd attempted to usurp Plaintiff's job duties. When Plaintiff raised concerns to McKenzie, McKenzie responded by telling Plaintiff that he "can't work with

anybody," a statement that undermined Plaintiff's authority and demonstrated favoritism toward Floyd as compared to Plaintiff, an African American.

12. In or around December 2023, Defendant placed Plaintiff into an Assistant Managerial role. However, this promotion was merely perfunctory, as Plaintiff was not properly compensated for the increased responsibilities and duties associated with the position.

13. Prior to this, Plaintiff was assigned to a Pack role. During this assignment, Floyd informed Plaintiff that he was expected to know the role without being given an opportunity to learn it, threatening discipline for any shortcomings. Floyd subsequently gave Plaintiff an unjustified, downgraded evaluation that did not accurately reflect Plaintiff's performance or competency. Floyd also prohibited Plaintiff from receiving any large bonuses and explicitly communicated this to Plaintiff.

14. During the 2023-2024 year, McKenzie required African American coordinators, including Plaintiff, to work in managerial positions without proper compensation. This practice disproportionately impacted African American employees and reflected McKenzie's racial animus. As a result, Plaintiff suffered financial harm.

15. In or around mid-2024, while Plaintiff was still in the Pack role, he was replaced by a Caucasian employee from Ohio and reassigned to side-by-side repair, remaining under Floyd's supervision. During this period, several Caucasian managers expressed to Plaintiff that it was unfortunate he, as an African American, would have to continue working under Floyd, further highlighting the racially charged environment.

16. In 2025, despite having limited experience in Repair, Plaintiff excelled in the role and improved the department's performance. Nevertheless, Floyd again gave Plaintiff a poor evaluation that did not reflect his actual performance. This negative evaluation was issued

as a form of race discrimination and retaliation, and it prevented Plaintiff from receiving a reasonable bonus, which ultimately works to affect Plaintiff's compensation in retirement.

17. Over the past two years, Clint Floyd-has consistently singled out Plaintiff for negative treatment in group meetings with other managers, a practice not directed at Caucasian managers. This disparate treatment further contributed to the racially hostile work environment.

18. As a result of the discriminatory and retaliatory conduct, Plaintiff filed an additional C and E complaint alleging race discrimination, retaliation, and a racially hostile work environment. Despite these complaints, the pattern of retaliation and harassment persisted.

19. Plaintiff has suffered significant harm as a result of Defendant's conduct, including loss of bonus income, which will impact Plaintiff's retirement, due to unjustified poor evaluations, loss of sleep, emotional distress, and extreme mental anguish.

20. The above-described conduct by Defendant, through its agents Floyd and McKenzie, constitutes a continuous and ongoing pattern of race discrimination, retaliation, and the creation of a hostile work environment, in violation of Plaintiff's rights under federal law.

## FOR A FIRST CAUSE OF ACTION
### (RACE DISCRIMINATION) (42 USC Section 1981)

21.  Each and every allegation set forth above is hereby repeated as fully incorporated herein.

22. Plaintiff is a member of a protected group on the basis of his race.  Plaintiff was discriminated against based on her race in violation of 42 U. S.C. § 1981.

23. Plaintiff is informed and believes that because of his race, African American, he received a downgraded performance review, was treated disparately from his similarly situated comparators and counterparts, and had benefits and rights taken from him.

24. Plaintiff asserts that the on-the-job treatment and retaliation were pretextual. Plaintiff alleges Defendant intentionally initiated the discriminatory practices against Plaintiff based on his race.

25. Defendant was reckless, wanton and intentional in the discrimination of the Plaintiff in the following particulars, to wit:

    a. Knowingly subjecting Plaintiff to a downgraded performance review.

    b. In subjecting Plaintiff to disparate disciplinary procedures as compared to his similarly situated Caucasian counterparts under like circumstances.

    c. In removing Plaintiff's job duties.

    d. In failing to protect Plaintiff from racial discrimination, preferential treatment or retaliation, Defendants acted with malice or reckless indifference to the federally protected rights set out under 42 U.S.C. Sec 1981.

26. The Defendant violated 42 U.S.C. Sec. 1981 by allowing the racial discrimination, preferential treatment and retaliation to exist in the workplace.

27. Defendant's racial discrimination of Plaintiff has caused, continues to cause, and will cause Plaintiff to suffer substantial embarrassment, humiliation, pain and suffering, mental anguish, loss of enjoyment of life, and other nonpecuniary losses.

28. Due to the acts of Defendant, its agents, and its employees, Plaintiff is entitled to injunctive relief, punitive and/or civil damages.

**FOR A SECOND CAUSE OF ACTION**
**(RETALIATION) (42 USC Section 1981)**

29. Each and every allegation set forth above is hereby repeated as fully incorporated herein.

30. Plaintiff is a member of a protected group on the basis of his race. Plaintiff was retaliated against for making complaints of race discrimination in violation of 42 U. S.C. § 1981.

31. Plaintiff is informed and believes that because of his protected complaints of race discrimination, he was given a poor performance review and suffered a removal of his job duties.

32. Plaintiff asserts that the on-the-job treatment and retaliation were pretextual. Plaintiff alleges Defendant intentionally initiated the retaliatory practices against Plaintiff based on his protected complaints.

33. Defendant was reckless, wanton and intentional in the retaliation against Plaintiff in the following particulars, to wit:

    a.   Knowingly subjecting Plaintiff to a downgraded performance review.

    b.   In subjecting Plaintiff to disparate disciplinary procedures as compared to his similarly situated Caucasian counterparts under like circumstances.

    c.   In removing Plaintiff's job duties.

    d.   In failing to protect Plaintiff from retaliation, Defendants acted with malice or reckless indifference to the federally protected rights set out under 42 U.S.C. Sec 1981.

    e.   The Defendant violated 42 U.S.C. Sec. 1981 by allowing the retaliation to exist in the workplace.

34. Defendant's retaliation of Plaintiff has caused, continues to cause, and will cause Plaintiff to suffer substantial embarrassment, humiliation, pain and suffering, mental anguish, loss of enjoyment of life, and other nonpecuniary losses.

35. Due to the acts of Defendant, its agents, and its employees, Plaintiff is entitled to injunctive relief, punitive and/or civil damages.

## FOR A THIRD CAUSE OF ACTION
### (BREACH OF CONTRACT)

36.  Each and every allegation set forth above is hereby repeated as if fully incorporated herein.

37. Defendant publishes and maintains an employee handbook, which definitely assures employees that they will be treated in a nondiscriminatory and fair manner.

38. Plaintiff relied on the promises contained in the employee handbook and other related policies governing fairness in the workplace, and which prohibit the discriminatory and unfair treatment that he experienced working for the Defendant.

39. Defendant further states, in its handbook, that it will comply with the requirements of the law in implementing equal employment decisions.

40. Plaintiff and Defendant entered into a binding and valid contract whereby Plaintiff relied on Defendant's policies and procedures pursuant to its employee handbook and the above policies, and procedures. Plaintiff also relied on the Defendant's reassurance that it must follow its Internal Equal Employment Opportunity policy in its treatment of its employees regarding its EEO policies and regarding investigations of allegations of wrongdoing. Defendant expressly disregarded its policies by retaliating against Plaintiff due to his complaints of race discrimination.

41. Plaintiff agreed to fulfill the duties of his position in exchange for valuable consideration and salary with the promise of being protected from unlawful discrimination.

42. Plaintiff performed his job duties with due diligence, however Defendant, through its agents, unjustifiably failed to perform its duties by failing adhere to its promises of protection under the employee handbook to include the Defendant's EEO policies.

43. All of these actions violate the contractual anti-retaliation provisions within Defendant's employment handbook (contract), and other contractual policies and procedures of the Defendant.

44. Defendant's conduct, by and through their agents, were done in bad faith and breached the implied covenant of good faith and fair dealings that is implied in the employment contract.

45. As a result of Defendant's breach of contract, Plaintiff has suffered actual, compensatory, physical, mental, emotional and consequential damages stemming from the breach and other such damages as are allowable by law.

### FOR A FOURTH CAUSE OF ACTION
### (BREACH OF CONTRACT ACCOMPANIED BY A FRAUDULENT ACT)

46.  Each and every allegation set forth above is hereby repeated as if fully incorporated herein.

47. Defendant publishes and maintains an employee handbook, which definitely assures employees that they will be treated in a nondiscriminatory and fair manner.

48. Plaintiff relied on the promises contained in the employee handbook and other related policies governing fairness in the workplace and which prohibit the discriminatory and unfair treatment that he experienced working for the Defendant.   Defendant further states, in its handbook, that it will comply with the requirements of the law in implementing equal employment decisions.

49. Plaintiff and Defendant entered into a binding and valid contract whereby Plaintiff relied on Defendant's policies and procedures pursuant to its employee handbook and the above policies, and procedures. Plaintiff also relied on the Defendant's reassurance that it must follow its Internal Equal Employment Opportunity policy in its treatment of its employees regarding its EEO policies and regarding investigations of allegations of wrongdoing. Defendant expressly disregarded its policies by retaliating against Plaintiff due to his complaints of race discrimination.

50. Plaintiff agreed to fulfill the duties of his position in exchange for valuable consideration and salary with the promise of being protected from unlawful discrimination.

51. Plaintiff performed his job duties with due diligence, however Defendant, through its agents, unjustifiably failed to perform its duties by failing adhere to its promises of protection under the employee handbook to include the Defendant's EEO policies.

52. All of these actions violate the contractual anti-retaliation provisions within Defendant's employment handbook (contract), and other contractual policies and procedures of the Defendant.

53. Defendant's conduct, by and through their agents, were done in bad faith and breached the implied covenant of good faith and fair dealings that is implied in the employment contract.

54. Defendant, by and through its agents, has failed to fulfill its obligation under its own written policies and has breached the terms thereof by reason of an intentional design on its part to defraud Plaintiff.   In furtherance of such intentional design, Defendant, through its agents, intentionally and maliciously placed Plaintiff in a position of being subjected to racial mistreatment. It was readily apparent that Defendant's false

reassurances were fraudulent as Defendant's continual violations of its own policy demonstrated. Defendant's conduct, by and through its agents, was done in bad faith and breached the implied covenant of good faith and fair dealings that is implied in the employment contract and handbook. As a direct and proximate result of Defendant's breaches of the Agency policies, the Agency Handbook and contract and procedures Plaintiff has been maligned and has suffered damages to include loss of sleep, mental anguish, emotional pain and suffering, and other compensatory, actual, and special damages due to the Defendant's failure to adhere to the terms of the policies established by the Defendant resulting in a breach of Plaintiff's employment contract accompanied by the above fraudulent acts as it relates to the Defendant.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Honorable Court declares that Defendant's actions complained of herein violated the rights guaranteed to Plaintiff and issue its judgment:

(1) A jury trial on all issues so triable.

(2) Declaring the actions complained of herein illegal;

(3) Issuing an injunction enjoining the Defendants, their agents, employees, successors, attorneys and those acting in concert or participation with the Defendants, and at their direction from engaging in the unlawful practices set forth herein and any other employment practices shown to be in violation of 42 USC Section 1981, and the common laws of the State of South Carolina to include Plaintiff's claim for breach of contract and breach of contract accompanied by a fraudulent act.

(4) Awarding Plaintiff compensatory and punitive damages for each Cause of Action contained herein, which the jury should find appropriate as a result of the Defendant's unlawful discriminatory actions taken as the result of Plaintiff's race and other pled causes of action; including mental anguish, pain and suffering, harm to Plaintiff's economic opportunities, any back pay, front pay and future earnings with cost-of-living adjustments, prejudgment interest, punitive damages, fringe benefits, and retirement benefits;

(5) Awarding Plaintiff his costs and expenses in this action, including reasonable attorney fees, and other litigation expenses; and

(6) Granting such other and further relief as may be just and necessary to afford complete relief to the Plaintiff as this Court may deem just and proper.

Respectfully Submitted,

By: s/Aaron Wallace_____
Aaron Wallace, Esq (100255)
Wallace Law Firm
1416 Laurel Street, STE B
Columbia, SC 29201
PH: 803-766-3997
Fax: 839-218-5786
awallace@wallacefirmsc.com

August 20, 2025
Columbia, South Carolina